UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTRINA KNIGHTEN, Individually, and as mother and next friend of DAMYA FORT, a minor,<br><br>        Plaintiff,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA, MAJKEN HANSON, and WEST SUBURBAN MEDICAL CENTER,<br>        Defendants. | No. 06 C 1318<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

On July 29, 2004, Plaintiff Martrina Knighten gave birth to a daughter, Da'mya Fort, at Defendant West Suburban Medical Center (hereinafter "Defendant," "West Suburban," or "the hospital"). Fort was later diagnosed with Erb's palsy, which Plaintiff alleges was caused by the negligence of West Suburban and that of her doctors, Defendants Dr. Nathalie McCammon and Dr. Brenda Parks-Johnson (collectively, "the doctors"). Counts I and IV of Plaintiff's Complaint at Law ("Complaint") allege that the hospital is vicariously liable for the torts committed by the doctors. West Suburban moved for summary judgment on these two counts, arguing that it is not liable because no agency relationship existed between itself and the doctors. For the reasons stated below, the court agrees with West Suburban that neither Dr. Parks-Johnson nor Dr. McCammon were the hospital's actual agents. Because genuine issues of material fact exist as to whether a jury could conclude that the two doctors acted with apparent authority, however, the motion is denied.

## FACTUAL BACKGROUND

In December 2003 or January 2004, Knighten began receiving prenatal care from Dr. Parks-Johnson at PCC Community Wellness Center ("PCC"), a health care clinic close to Knighten's home. (Def.'s 56.1 ¶¶ 12, 13.) Dr. Parks-Johnson also occasionally saw Plaintiff at West

Suburban, where Plaintiff received ultrasounds and prenatal stress tests. (Pl.'s 56.1 ¶¶ 2, 5.) According to Plaintiff, at least once during these tests at West Suburban she saw other medical personnel as well, including a male doctor who explained the results of one of her ultrasounds. (Knighten Dep. 47:13-16, Ex. 3 to Pl.'s 56.1.) During one of Plaintiff's visits with Parks-Johnson, Plaintiff asked where Parks-Johnson would deliver the baby, and Parks-Johnson informed her that the delivery would take place at West Suburban. (Def.'s 56.1 ¶ 17.) Plaintiff was considered to have a high-risk pregnancy because she had been diagnosed with gestational diabetes and elevated blood pressure. (Pl.'s 56.1 ¶ 3.)

Plaintiff claims that she went to West Suburban for an examination on July 28, 2004, but was not seen by a physician at that time. (*Id.* ¶ 4.) Later that evening, Plaintiff's water broke, and she returned to the emergency room at West Suburban. (*Id.* ¶ 6.) Parks-Johnson was present throughout the day on July 29, and was the only doctor monitoring Plaintiff until delivery. (*Id.* ¶¶ 8, 11.) Parks-Johnson had previously informed Plaintiff that she might be on vacation when Plaintiff went into labor, in which case Dr. McCammon would assist her during her labor. (Def.'s 56.1 ¶ 19.) Plaintiff did meet McCammon for the first time on the morning of July 29, but McCammon was the attending physician on the floor and had little interaction with Plaintiff that day. (Pl.'s 56.1 ¶¶ 7, 9, 11.) Da'Mya Fort was born later that evening, at 7:49 p.m. (*Id.* ¶ 10.)

Both Drs. Parks-Johnson and McCammon were employed by PCC in July 2004. (Def.'s 56.1 ¶¶ 15, 20.) Specifically, Parks-Johnson was employed through PCC as a maternal-child health fellowship physician at West Suburban. (Pl.'s 56.1 ¶ 13.) In addition to the training she was receiving at West Suburban in obstetrics, where most of her decisions required the approval of a supervising physician, Parks-Johnson also had the privileges of an attending physician on the general medicine floors of the hospital, meaning she had unrestricted privileges on those floors. (Parks-Johnson Dep. 10:15-24, Ex. 1 to Pl.'s 56.1.) Prior to working for PCC, McCammon had completed a fellowship at West Suburban, and she retained her privileges at West Suburban after

2

moving into private practice with PCC. (McCammon Dep. 8:14-9:14, Ex. 2 to Pl.'s 56.1.) At the time of Knighten's delivery, McCammon was an attending physician at West Suburban.[1] (Pl.'s 56.1 ¶ 17.)

PCC had a contractual relationship with West Suburban in which PCC doctors were permitted to practice in the West Suburban Medical Center. (Def.'s 56.1 ¶ 21.) The contract set forth the following provision concerning the relationship between the hospital and the PCC physicians:

> **2. Independent Contractor.** In performing services pursuant to this agreement, PCC and each of the PCC physicians is, at all times, acting and performing as an independent contractor. West Suburban Medical Center shall neither have nor exercise any control over the methods, techniques or procedures by which PCC and each such physician shall perform his or her professional responsibilities and functions.

(*Id.*) Parks-Johnson never told Plaintiff that she was an employee of West Suburban, but there is no evidence that she ever clearly expressed to Plaintiff that she was a contractor operating independently of West Suburban, either. (*Id.* ¶ 18.) The consent form signed by Plaintiff upon her admission to West Suburban on July 28 did not clarify Parks-Johnson's relationship with the hospital: "During your stay, your medical care will be managed by your attending physician, *who may or may not be an employee of the hospital* but has privileges to care for patients at this facility. Other physicians treating you during this admission . . . *may* not be employees of West Suburban . . . ." (Pl.'s 56.1 ¶ 23 (emphasis added).)

Plaintiff brought the present suit in March 2006, alleging negligence in her medical care that caused Da'Mya to be born with Erb's palsy.[2] (*Id.* ¶ 1.) In Counts I and IV of the Complaint, Plaintiff

---

[1] The hierarchy of positions in the obstetrics program was (from top to bottom): obstetrical backup; attending physician; fellow (who had completed a residency); resident; intern. (Parks-Johnson Dep. 13:18-14:6, Ex. 1 to Pl.'s 56.1.)

[2] Also referred to as brachial plexus paralysis, Erb's palsy is a paralysis of the arm. DORLAND'S ILLUSTRATED MED. DICTIONARY 1228 (28th ed. 1994).

alleges that West Suburban is liable for the actions of Drs. Parks-Johnson and McCammon as agents of the hospital. (Def.'s 56.1 ¶ 11.) West Suburban moved for summary judgment on these two counts, arguing that the doctors were neither actual nor apparent agents for the hospital.

## **DISCUSSION**

The existence of an agency relationship between a doctor and a hospital is a proper question for summary judgment. *Johnson v. Methodist Med. Ctr.*, 10 F.3d 1300, 1305 (7th Cir. 1993) (citing *N. Trust Co. v. St. Francis Hosp.*, 168 Ill. App. 3d 270, 522 N.E.2d 699 (1st Dist. 1988)). Summary judgment is appropriate when, after reviewing the evidence submitted by the parties, the court determines that there is no genuine issue of material fact. FED. R. CIV. P. 56(c). The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *See, e.g.*, *Amrehein v. Health Care Serv. Corp.*, 546 F.3d 854, 858 (7th Cir. 2008). The court does not weigh the evidence at this stage, but only determines whether a reasonable fact-finder could find in favor of the non-moving party. *See Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007).

In counts I and IV of the Complaint, Plaintiff claims that the hospital is vicariously liable for the torts committed by Parks-Johnson and McCammon. A hospital may be held vicariously liable for torts committed by a physician acting as its agent. *See Gilbert v. Sycamore Mun. Hosp.*, 156 Ill. 2d 511, 518, 622 N.E.2d 788, 792 (1993). Plaintiff does not appear to argue that an actual agency relationship existed between Drs. Parks-Johnson and McCammon and the hospital, and the evidence appears conclusive that the doctors were independent contractors and not agents of the hospital. Specifically, the contract between PCC and West Suburban states, in part, "In performing services pursuant to this agreement, PCC and each of the PCC physicians is, at all times, acting as an independent contractor." (Ex. H to Def.'s 56.1 at 3.) Thus, the court agrees that the doctors did not possess actual authority to act on behalf of the hospital.

Plaintiff nevertheless may claim that the hospital is vicariously liable because the doctors

4

acted with apparent authority. In *Gilbert v. Sycamore Municipal Hospital*, the Illinois Supreme Court held that a hospital will be held vicariously liable under an apparent authority doctrine for the actions of a doctor working at the hospital unless the patient knew, or should have known, that the doctor was an independent contractor. 156 Ill. 2d at 524, 622 N.E.2d at 795. In extending vicarious liability to hospitals in these situations, the court found that "the realities of modern hospital care," including the fact that hospitals advertise and compete for patients on the basis of their ability to provide professional care, justified extending liability to the hospital for the torts of independent contractors. *Id.* at 522, 622 N.E.2d at 794. To prove that the plaintiff did not know, and did not have reason to know, about the doctor's status as an independent contractor,

> a plaintiff must show that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital . . . and [(2)] the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.

*Id.* at 525, 622 N.E. 2d at 795 (quoting *Pamperin v. Trinity Mem'l Hosp.*, 144 Wis. 2d 188, 207-08, 423 N.W.2d 848, 855-56 (1988)).[3] Genuine issues of material fact exist as to both these elements, and so summary judgment is not warranted on Plaintiff's claims of apparent authority.

The first element requires proof that the hospital "held itself out" in such a manner that it would lead a reasonable person to believe that the doctors were employees. *Gilbert*, 156 Ill. 2d at 525, 622 N.E.2d at 796. This element does not require the hospital to make an explicit

---

[3] The *Gilbert* court identified another "element": "(2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had the knowledge of and acquiesced in them." *Id.* at 525, 622 N.E.2d at 795. This additional "element" may properly be understood as a separate way to prove apparent authority. In other words, a plaintiff could prove apparent authority either by showing that she justifiably relied on a representation made by the *hospital*, or by showing that she justifiably relied on a representation made by the *doctor* which the hospital knew of and ratified; notably, the *Gilbert* court did not refer to this "element" in its holding. *Id.* at 525; 622 N.E.2d at 796; *accord Pamperin*, 144 Wis. 2d at 210-11, 423 N.W.2d at 857; RESTATEMENT (THIRD) OF AGENCY § 7.08 cmt. b (2006). Here, Plaintiff proceeds under the theory that West Suburban itself, not Drs. Parks-Johnson and McCammon, made representations upon which Plaintiff justifiably relied.

5

representation that the doctors worked there, only that the hospital holds itself out as a medical care provider and failed to inform Plaintiff that independent contractors provide the medical services. *Id.* Plaintiff points to a number of facts to support her claim that she was reasonable in her belief that the hospital was holding itself out as the doctors' employers. First, Plaintiff received prenatal care, including prenatal stress tests and ultrasounds, at West Suburban. (Pl.'s 56.1 ¶¶ 2, 5.) According to Plaintiff, a male doctor at West Suburban whom she did not know explained the results of one of the ultrasounds to her. (Knighten Dep. 47:13-16, Ex. 3 to Pl.'s 56.1.) Additionally, Plaintiff argues that the consent form she signed the morning she went into labor supports finding that the hospital held itself out as the doctor's employer. The court in *Gilbert* based its holding in part on the consent form the plaintiff signed that stated the plaintiff would be treated "by physicians and employees of the hospital." *Id.* at 526, 622 N.E.2d at 796. The consent form that Knighten signed contained a provision that stated that her attending physician "may or may not be an employee of the hospital." (Ex. 5 to Pl.'s 56.1.) Both parties argue that this language supports their claim, arguing either that it shows the hospital did hold itself out as independent of the doctors (by alerting Plaintiff to the possibility she was dealing with non-hospital employees) or did not hold itself out as independent (by not clearly stating that Plaintiff's doctors were independent contractors). The court cannot say as a matter of law that Plaintiff's interpretation of the consent form was unreasonable.[4] Construed in the light most favorable to Plaintiff, the evidence shows that both her doctor and other doctors were performing tests and describing the results to her at West Suburban, and that on the day she went into labor, she signed a consent form saying that she might be treated

---

[4] This is not a matter of shifting a question of contract interpretation—which is a question of law to be determined by the courts, *see Korte v. Nat'l Super Markets, Inc.*, 173 Ill. App. 3d 1066, 1071, 528 N.E.2d 10, 13 (5th Dist. 1988)—to the jury, because the inquiry here is not regarding the meaning of the contract. Rather, the question is whether a reasonable person reading the contract would conclude that the hospital was holding itself out as the employer of the doctors. *Gilbert*, 156 Ill. 2d at 525, 622 N.E.2d at 795. "Reasonableness is usually a fact question for the jury." *Crowell v. Life Investors Ins. Co.*, 133 Ill. App. 3d 913, 917, 479 N.E.2d 1087, 1090 (3d Dist. 1985).

by hospital employees. This creates a genuine issue of material fact as to whether a reasonable person would have thought that the hospital held itself out as the employer of the doctors, and summary judgment would thus be inappropriate.

West Suburban argues that even if the hospital held itself out in such a manner that a reasonable person would believe the doctors were employed there, Plaintiff did not justifiably rely upon the hospital's representations. A patient justifiably relies on the hospital's representations if the patient goes to the hospital seeking care from the hospital in general rather than from a specific doctor. *Gilbert*, 156 Ill. 2d at 525, 622 N.E.2d at 796. In this case, the fact that Plaintiff went to West Suburban even though Parks-Johnson, her doctor, had informed her that Parks-Johnson would be on vacation, suggests that she was seeking treatment from the hospital rather than from a specific doctor. In response, the hospital emphasizes that Parks-Johnson told Plaintiff that McCammon would treat Plaintiff while Parks-Johnson was on vacation, so Plaintiff still intended to be treated by a specific doctor when she went to West Suburban. This evidence, however, does not preclude summary judgment. The fact that Parks-Johnson informed Plaintiff that McCammon would deliver her baby at West Suburban does not establish that Plaintiff understood that McCammon or Parks-Johnson was unaffiliated with the hospital. Indeed, there is a genuine dispute as to whether Plaintiff thought Parks-Johnson was affiliated with West Suburban: while Plaintiff admits that Parks-Johnson never said she was an employee of West Suburban, Plaintiff may have assumed that she was somehow an agent of the hospital since Parks-Johnson told her that she would be having her baby there. If Plaintiff thought Parks-Johnson was a hospital agent, and possibly even if she did not think that, it would be reasonable for her to also think that McCammon was as well. The reasonableness of this impression is bolstered by the substantial responsibilities retained by the two doctors at West Suburban, where both were empowered to act as attending physicians throughout large areas of the hospital. This evidence is subject to different interpretations, and viewed in the light most favorable to Plaintiff, genuine issues of material fact

exist as to whether Plaintiff was seeking care generally from the hospital or if she was seeking care from her specific doctor or doctors.

Defendant's other arguments are similarly unavailing. West Suburban argues that Plaintiff did not actually rely on its representations and that she sought admission to the hospital either because it was the closest hospital when her water broke or because Parks-Johnson directed her there. While the facts supporting these arguments are undisputed—the hospital was closest and Parks-Johnson did tell her she would deliver at West Suburban—the evidence does not support the direct causal relationship that West Suburban suggests exists. First, as stated above, genuine issues exist concerning whether Plaintiff did rely on Parks-Johnson in choosing West Suburban. And even if she did go to West Suburban to be treated by her doctor or her doctor's designee, that does not necessarily mean that she did not rely on the hospital. "If . . . a patient does select a particular physician to perform certain procedures within the hospital setting, this does not alter the fact that a patient may nevertheless still reasonably rely upon the hospital to provide the remainder of the support services necessary to complete the patient's treatment." *York v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 222 Ill. 2d 147,194, 854 N.E.2d 635, 661 (2006). In addition, Plaintiff may have justifiably relied on how the hospital held itself out based on her previous visits when she received ultrasounds and stress tests there. The court's duty on a motion for summary judgment is not to weigh the persuasiveness of competing arguments, but rather to determine whether a reasonable fact-finder could find in favor of the non-moving party. *See Washington*, 481 F.3d at 550. A reasonable fact-finder could conclude that the hospital out the doctors as its employees or agents and that Plaintiff justifiably relied on the hospital's representations. Summary judgment must therefore be denied as to Plaintiff's claim that the doctors acted with apparent authority.

## **CONCLUSION**

Defendant West Suburban Medical Center's motion for partial summary judgment [69] is denied.

ENTER:

Dated: December 16, 2008   _____
REBECCA R. PALLMEYER
United States District Judge